FILED
UNITED STATES DISTRICT COURT
Las Cruces New Mexico

MAY - 1 2000

CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDITH O. BARELA,

    Plaintiff,

v.

No. CIV 98-1371 BB/WWD

UNITED STATES DEPARTMENT OF
DEFENSE, ET AL.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' motion for summary judgment (Doc. 35). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion for summary judgment should be denied.

**Exhaustion of Remedies**

This case arises out of the termination of Plaintiff's employment with the federal government. Defendants' motion is based on several arguments. First, Defendants maintain Plaintiff did not contact an Equal Employment Opportunity ("EEO") counselor within 45 days of her termination, and therefore failed to exhaust her administrative remedies.[1] Plaintiff, however, responds that she filed a claim with the MSPB thirty days after her termination. She also points out that under the applicable

---

[1] As a federal employee, Plaintiff was subject to different rules and requirements than the ordinary Title VII plaintiff. *See generally Sloan v. West*, 140 F.3d 1255, 1259-60 (9th Cir. 1997). One option she had was to initially pursue the EEO process provided by her employer, with the possibility of later appealing an adverse decision to the Merit Systems Protection Board ("MSPB"). *Id.* She also, however, had the option of attempting to immediately pursue her claim with the MSPB as a "mixed case" that would address the adverse employment action as well as her claim of racial discrimination. *Id.* Plaintiff chose to pursue the latter course of action.

regulation, this filing is deemed to be the date of initial contact with the EEO counselor, because MSPB dismissed her appeal for jurisdictional reasons. *See* 29 C.F.R. § 1614.302(b). The documentary evidence attached to Plaintiff's response indicates that she did in fact appeal her termination to the MSPB, on May 23, 1997, thirty days after her termination. In addition, her appeal was in fact dismissed by MSPB for lack of jurisdiction. Under Section 1614.302(b), therefore, the date of Plaintiff's filing with the MSPB is deemed to be the date of her required initial contact with the EEO counselor. *See also Sloan*, 140 F.3d at 1261 (when discrimination complaint is dismissed by MSPB for lack of jurisdiction, statute of limitations for filing a complaint with the agency EEO is considered to have been tolled by filing of the MSPB complaint). This date, May 23, 1997, is well within the forty-five day period upon which Defendants rely. The Court therefore finds this ground for dismissal is without merit.

**Merits -- Discrimination Claim**

Defendants also maintain there are no facts in dispute in this employment-discrimination case, and they are entitled to summary judgment as a matter of law. "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless,

2

a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion for summary judgment in light of these standards.

Plaintiff maintains she presented direct evidence that discrimination on the basis of her race played a role in her termination. If that is true, it is not necessary to apply the ubiquitous *McDonnell Douglas* burden-shifting analysis in this case, as direct evidence is sufficient standing alone to allow a Title VII plaintiff to avoid summary judgment. *See McGarry v. Bd. of County Comm'rs*, 175 F.3d 1193, 1199 (10th Cir. 1999); *Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993); *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007-08 (10th Cir. 1990).

The direct evidence required to bypass the *McDonnell Douglas* test and resist a motion for summary judgment is not simply evidence that a supervisor is biased, or has made racially derogatory comments. *Ramsey*. The fact that a supervisor is prejudiced against a certain race or races is not direct evidence that the supervisor acted on the basis of that prejudice in making an employment decision. *Id.* Therefore, statements of personal opinion, even when reflecting a personal bias or prejudice, are not direct evidence of discrimination. *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999). Instead, direct evidence is evidence showing that the supervisor's actions were actually motivated by bias or prejudice. For example, evidence that a supervisor investigated the reasons for hiring two different people rather than the plaintiff, and allegedly stated that the hirings were "minority hires," is direct evidence of discrimination because it is connected directly to the disputed employment action. *See McGarry*. Similarly, evidence that a supervisor called the fired plaintiff an "old man," and stated a few days after the firing that he would not "back

3

that old man," was direct evidence that at least part of the reason the plaintiff was fired was because of his age. *See Riffel v. Oklahoma Gas and Elec. Co.*, 1998 WL 161153 (10th Cir.).

In this case, Plaintiff has presented the following evidence, viewed in the light most favorable to Plaintiff: (1) Plaintiff is of Caucasian extraction, and Plaintiff's supervisor was African-American; (2) Plaintiff's supervisor was biased against whites, and when she had hiring authority attempted to hire as many black employees as possible; (3) Plaintiff's supervisor made several racially derogatory comments about Plaintiff and other white employees, including comments such as "These white bitches will never work for DeCA again if I have anything to do with it," and that there were too many white faces spoiling the scenery; (4) Plaintiff's supervisor altered coupon counts for at least two of the white employees so that their coupons would not balance; (5) Plaintiff successfully challenged a coupon error of which her supervisor had accused her; and (6) after Plaintiff was fired, Plaintiff's supervisor made the following statement: "one white down, four to go."

Most of the above evidence shows only that Plaintiff's supervisor allegedly was biased against white employees, and is therefore only indirect evidence on the discrimination issue. The final comment attributed to the supervisor, however, directly ties her claimed biases to Plaintiff's termination. Despite Defendants' efforts to discount the significance of this comment, the comment (again, viewed in the light most favorable to Plaintiff) indicates that Plaintiff was fired at least in part because she is white, by a supervisor who preferred to have as many non-white employees as possible. Unlike other cases cited by Defendants, the comment in this case was made by the person who terminated Plaintiff's employment, and the comment directly concerned the termination of her employment. In those respects, this case is similar to cases such as *Riffel*, where the supervisor made comments concerning his refusal to support the plaintiff during the termination process, and implying

4

that the refusal was based on the plaintiff's age. *See also Goodwin v. M.C.I. Communications Co.*, 1998 WL 42562 (10th Cir.) (supervisor exhibited racial animus toward plaintiff and African-Americans in general; these derogatory comments were made by primary decision-maker in plaintiff's termination, and in context of discussing his termination; thus, they supported inference that termination was motivated by discriminatory intent). In sum, the Court finds Plaintiff has submitted sufficient direct evidence of discrimination in this case to avoid summary judgment on the question whether such discrimination played at least some role in her termination.[2]

**Merits – Retaliation Claim**

Plaintiff had a meeting in early 1997 with a management-level employee, James Festa. At this meeting she allegedly complained that her supervisor was biased against Anglos and favored Blacks. Plaintiff claims her relationship with her supervisor "soured" after this meeting, and maintains she was terminated at least in part in retaliation for her complaints of discrimination.

Unlike the discrimination claim, there is no direct evidence that retaliation played a role in the decision to terminate Plaintiff's employment. Therefore, the *McDonnell Douglass* burden-shifting analysis must be employed to assess Plaintiff's retaliation claim. To establish a prima facie case of retaliation, Plaintiff must show she engaged in protected conduct, the conduct was followed by an

---

[2] Most of this evidence is contained in an affidavit of an African-American woman formerly employed by Defendants. As Defendants point out, when Plaintiff first responded to the motion for summary judgment, she did not include an affidavit but merely an unsworn statement by the same employee. Plaintiff subsequently submitted the affidavit, in untimely fashion. Defendants argue the affidavit should be stricken. The Court declines to take such a drastic step, noting (1) the affidavit was filed only eight days after the motions packet was filed, and (2) Defendants had an opportunity to respond, in their reply brief, to the contents of the unsworn version of the affidavit as well as the affidavit itself. However, Plaintiff's counsel is cautioned to adhere more strictly to the time deadlines contained in our local rules, and to request permission to deviate from those deadlines, rather than simply filing a document or pleading outside the time provided in the rules.

5

adverse employment action, and there is a causal connection between the conduct and the adverse action. *See Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 342-43 (10th Cir. 1982).

Defendants first maintain there is no evidence Plaintiff engaged in protected conduct. They claim Plaintiff, in her deposition, denied raising the issue of racial discrimination in her meeting with Festa. Instead, they contend, she complained only about favoritism toward certain employees, including a white employee. Defendants also argue the Court must disregard an affidavit given by a fellow employee who attended the Festa meeting at Plaintiff's request. According to Defendants, this affidavit conflicts with Plaintiff's express deposition testimony and must therefore be disregarded. The Court disagrees with Defendants' arguments concerning the affidavit, and also disagrees with the contention that Plaintiff clearly denied having brought up the issue of racial discrimination in her meeting with Festa.

Plaintiff's fellow employee, Jerry Sena, did not provide his affidavit to Plaintiff for purposes of this lawsuit, and the affidavit was not prepared subsequent to Plaintiff's deposition testimony. Instead, the affidavit was a statement given to Defendants' EEO investigator, in February 1998, long before this lawsuit was even filed. This affidavit was not prepared and submitted in order to create a sham issue of fact and avoid summary judgment. Therefore, there is no reason to refuse to consider the affidavit. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (prevention of tactic of creating sham issue of fact is basis for rule that later-submitted affidavits contradicting earlier deposition testimony may be disregarded by a court). Sena's affidavit clearly states that in the meeting with Festa, Plaintiff complained that her supervisor "was against the Anglos and favored Blacks," and was "more strict with the Anglos than with the Blacks."

In addition, Plaintiff's deposition testimony is equivocal on the issue of whether she raised racial discrimination as a complaint during the Festa meeting. It is true that at several times, Plaintiff acknowledged she may have complained only about favoritism toward certain employees, without mentioning race as a basis for that favoritism. However, at one point in her testimony, Plaintiff stated that she told Festa about an African-American employee being allowed to have longer lunches and breaks, and never being at her register. She also said she told Festa about "some of the other African American cashiers that got to do what they wanted to do while the rest of us worked..." These statements indicate Plaintiff did bring up the issue of differential treatment for black employees and white employees in her meeting with Festa. Therefore, for purposes of summary judgment, Plaintiff has established she engaged in protected conduct.

Plaintiff's meeting with Festa took place on February 12, 1997, according to her testimony. Plaintiff's supervisor apparently recommended in March 1997 that Plaintiff be fired.[3] This close proximity in time between the protected activity and the adverse employment action raises an inference of causal connection between the two that is sufficient to establish a prima facie case of retaliation. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing prior case indicating that one-and-one-half-month period between protected activity and adverse action may, by itself, establish causation).

Once Plaintiff has made her prima facie showing, the burden shifts to Defendants to offer a legitimate, non-retaliatory reason for the termination. Defendants have done so in this case, by

---

[3]The date this recommendation was made is not clear. Plaintiff was not actually terminated until April 23, 1997, but her supervisor's declaration, submitted in support of the motion for summary judgment, indicates she forwarded information concerning Plaintiff's poor performance, as well as the termination recommendation, to a personnel management specialist in March.

7

presenting evidence indicating Plaintiff's performance was deficient in three different areas. Therefore, under the *McDonnell Douglass* analysis, the burden shifted back to Plaintiff to present sufficient evidence of pretext to raise an issue of fact as to whether retaliatory motives played a significant role in the termination decision.

Viewing the evidence in the light most favorable to Plaintiff, she has adduced the following facts bearing on the issue of pretext. In late January 1997, her supervisor reviewed her mid-year performance and told her she was doing well, although she had a problem in one performance area-- processing checks. Plaintiff met with Festa two weeks later and complained about favoritism toward African-American employees. Following this meeting, Plaintiff's supervisor became extremely cold toward Plaintiff, and their relationship "soured." Approximately a month or a month and a half later, Plaintiff's supervisor recommended that Plaintiff be fired, and cited deficiencies in not one but three performance areas. Finally, some of these deficiencies may have been fabricated by the supervisor. In some cases, close proximity in time between the protected conduct and the adverse action may alone be sufficiently probative of a retaliatory motive to withstand summary judgment. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994). In this case, there is the additional factor of a sudden change in attitude following the protected activity, as well as a sudden change in the evaluation of Plaintiff's performance. The supervisor switched from telling Plaintiff she was doing well, but needed to work on one area of deficient performance, to recommending termination due to claimed deficiencies in three performance areas. *See Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 752 (10th Cir. 1999) (steady worsening of performance evaluations following protected ADA conduct was evidence of pretext). The Court therefore holds Plaintiff has

established a genuine issue of material fact as to the pretext issue, sufficient to survive summary judgment.

**Conclusion**

Based on the foregoing, the Court will deny Defendants' motion for summary judgment.

## ORDER

In accordance with the foregoing Memorandum Opinion, Defendants' motion for summary judgment (Doc. 35) is hereby **DENIED**.

Dated this _1st_ day of May, 2000.

BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff**
Gregory M. Acton
Gregory M. Acton, P.C.
P.O. Box 67337
Albuquerque, New Mexico 87193

**For Defendants**
Michael H. Hoses
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103